# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | | |
|---|---|---|
| **TONYA DAVIS,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Shelby Circuit No. 90481-7 T.D. |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 02A01-9812-CV-00346 |
| **UNIVERSITY PHYSICIANS** | ) | |
| **FOUNDATION, INC., d/b/a** | ) | |
| **UNIVERSITY OF TENNESSEE** | ) | |
| **MEDICAL GROUP, INC.,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

**August 24, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE


THE HONORABLE ROBERT A. LANIER, JUDGE


For the Plaintiff/Appellant:                 For the Defendants/Appellees:

Walter Buford                             Michael G. McLaren
Memphis, Tennessee                 Andrea N. Malkin
                                      Memphis, Tennessee


**AFFIRMED IN PART, REVERSED IN
PART AND REMANDED**


HOLLY KIRBY LILLARD, J.


CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

# OPINION

This is a medical malpractice case. The plaintiff filed this lawsuit against two resident physicians and a non-profit physicians' group for negligence in performing a tubal ligation. The trial court granted the physicians' group partial summary judgment, holding that the individual physicians were not apparent agents of the physicians' group. We affirm in part, reverse in part, and remand.

On October 2, 1997, Plaintiff/Appellant Tonya Davis ("Davis") filed a complaint against Defendants/Appellees Elizabeth McKinney, M.D. ("Dr. McKinney"), Sandra Elfering, M.D. ("Dr. Elfering") and the University Physicians Foundation, Inc., d/b/a University of Tennessee Medical Group, Inc. ("UT Medical Group"), alleging medical malpractice in the performance of tubal ligation surgery. The complaint asserted that Drs. McKinney and Elfering were employees or agents of UT Medical Group, and were acting within the scope of their employment at the time of the alleged negligence.

Dr. Elfering was employed as a resident physician by the department of obstetrics and gynecology ("the Department") at the University of Tennessee College of Medicine. The Department assigned her to work at the Regional Medical Center. Dr. McKinney was a physician on active duty with the United States Navy and an employee of the United States government. Under an agreement among the University of Tennessee, UT Medical Group, and the United States Navy, Dr. McKinney was to receive training in obstetrics and gynecology maternal-fetal medicine at the University of Tennessee. The agreement provided that Dr. McKinney "remains an employee of the United States and perform[s] duties within the course and scope of [her] federal employment . . . ." The agreement described UT Medical Group as "an affiliated organization through which the training institution faculty conducts clinical practice . . . ." The agreement provided that UT Medical Group would bill patients for services rendered by Dr. McKinney.

On January 2, 1998, Dr. Elfering filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Affidavits in support of the motion were submitted by Dr. Elfering and Dr. James Gibb Johnson, associate dean of the University of Tennessee College of Medicine. Both affidavits stated that Dr. Elfering was employed by the University of Tennessee as a resident physician. Dr. Elfering's motion to dismiss asserted that Dr. Elfering was entitled to absolute immunity pursuant to Tennessee Code Annotated § 9-8-307(h) because she was a state employee. Dr. Elfering's motion also contended that the trial court

lacked subject matter jurisdiction under Tennessee Code Annotated § 9-8-307(a)(1)(D), which states that the Claims Commission has exclusive jurisdiction to determine montary claims against state employees for medical malpractice. Tenn. Code Ann. § 9-8-307(a)(1)(D) (Supp. 1998). On March 5, 1998, the trial court entered a consent order dismissing Dr. Elfering for the reasons set forth in her motion to dismiss. On May 1, 1998, the trial court also entered a consent order dismissing Dr. McKinney, finding that the court lacked subject matter jurisdiction under the Federal Torts Claims Act[1] because, at the time of the incident, Dr. McKinney was a United States naval officer and was employed by the United States Navy.

On January 20, 1998, UT Medical Group filed a motion to dismiss, or in the alternative, a motion for summary judgment. In support of the motion, UT Medical Group filed a statement of undisputed facts, alleging that no genuine issue of material fact exists as to UT Medical Group's vicarious liability. On July 24, 1998, Davis filed an amendment to the original complaint alleging that "[t]he University of Tennessee Medical Group, INC. [sic] was negligent in assigning two (2) trainee surgeons to operate on Complainant without supervision from a staff surgeon of said Medical Group." Davis also filed a response to UT Medical Group's motion, asserting that UT Medical Group was vicariously liable for the actions of Dr. Elfering and Dr. McKinney because UT Medical Group billed for Dr. McKinney's services.

On October 8, 1998, the trial court granted partial summary judgment in favor of UT Medical Group as to all of the allegations in original complaint. UT Medical Group's motion was denied as to the allegations in the amended complaint. Thus, the trial court implicitly found a factual issue as to the allegations of negligent supervision against UT Medical Group.

On October 22, 1998, Davis filed a motion to reconsider the grant of partial summary judgment citing *White v. Methodist Hospital South*, 844 S.W.2d 642 (Tenn. App. 1992). Based on *White*, Davis renewed her argument that an agency relationship existed between the physicians and UT Medical Group because UT Medical Group "billed" for Dr. McKinney's services. In the alternative, Davis sought an interlocutory appeal pursuant to Rule 9 of the Rules of Appellate Procedure. The trial court denied Davis' motion to reconsider:

---

[1]The Federal Tort Claims Act provides that the federal courts have exclusive jurisdiction over monetary claims involving federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b) (1988).

The surgery in question was performed by Drs. Elfering and McKinney. Dr. Elfering was employed by the University of Tennessee and Dr. McKinney was on active duty with the United States Navy and an employee of the United States Government. Pursuant to orders of the U.S. Navy, Dr. McKinney was assigned to the University of Tennessee for the purpose of receiving medical training in obstetrics and gynecology maternal-fetal medicine. She continued to receive compensation from the U.S[.] Navy and was prohibited from receiving compensation, in any form, from any other source. Following the surgery, UTMG forwarded a bill for services to the plaintiff, as Dr. McKinney was forbidden to do so by her employment by the government.

It is the plaintiff's position that Dr. McKinney was either an actual or ostensible servant of UTMG at the time of the surgery by virtue of the fact that UTMG sent a bill for her services. Plaintiff now cites and relies upon the case of *White v. Methodist Hospital* 844 SW2d 642 [sic] (Tenn. App. 1992), in which the court found all of the elements necessary to estop the hospital where the surgery in question occurred from denying that the anesthesiologist was its "agent" (apparently meaning "servant"). [Footnote omitted] After discussing the fact that an estoppel requires actions by the principal creating the appearance of a master-servant relationship, and reasonable reliance thereupon by the plaintiff to his detriment, the court of appeals adopted a new rule in which evidence of reliance by the plaintiff may be inferred "in the hospital setting." The court made the following statements:

> An increasing number of jurisdictions have held that in situations where a *hospital* offers a service, such as the care of an anesthesiologist, and the patient has no part in choosing the individual who will perform the service, a court may infer that the patient reasonably relied upon the health care provider's apparent authority to act for the *hospital*. . . .
>
> [U]nless there is some reason for a patient to believe that the treating physician in a *hospital* is an independent contractor, it is natural for the patient to assume reliance on the reputation of the *hospital* as opposed to any specific doctor. . . . A *hospital* should be vicariously liable for doctors in emergency or operating room settings not withstanding [sic] the existence of a private contract with secret limitations between *hospital* and doctor. . . contrary to the *hospital's* apparent representation. Patients often seek care and treatment from *hospitals* rather than from particular physicians. . . . It seems only reasonable that the hospital should be vicariously responsible for the neglect of its staff members. . . .
>
> . . . in light of the increasing tendency of courts in other jurisdictions to infer reliance in the *hospital* setting, we believe that under the proof [that an anesthesiologist had a permanent office in the *hospital* for which he paid no rent and which gave no notice that he was anything other than part of the *hospital*] that plaintiff has presented enough evidence to create a genuine issue of material fact as to whether [the anesthesiologist and the nurse] were the apparent agents of [*the hospital*]. [italics supplied]

The court of appeals quoted with approval the decision of a Georgia court which refused to restrict application of this theory to emergency rooms.

From the foregoing, it will be seen that the doctrine invented by the court of appeals is restricted to hospitals and would not logically apply to a group of physicians. This is especially true as there is apparently no reason to think that Plaintiff was aware of their identities or relationship to the operating physician.

The result is that the plaintiff's action against Dr. McKinney remains based entirely upon the fact that UTMG sent a bill for her services. Whether that was proper or not, the court has not been cited any authority by which that would make Dr. McKinney UTMG's servant. For that reason, the court respectfully denies Plaintiff[']s motion to set aside the summary judgment heretofore granted to UTMG.

The trial court granted Davis' motion for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

On appeal, Davis argues that UT Medical Group is vicariously liable for the actions of the resident physicians, maintaining that they were agents or apparent agents of UT Medical Group because UT Medical Group billed for Dr. McKinney's services.

In the trial court below, Davis argued *inter alia* that the physicians were the apparent agents of UT Medical Group, citing **White v. Methodist Hospital South**, 844 S.W.2d 642 (Tenn. App. 1992). In **White**, this Court held that there was a genuine issue of material fact as to whether an anesthesiologist and an operating room nurse were the apparent agents of the hospital. **White**, 844 S.W.2d at 646. The Court noted that where a hospital offers a service, such as the services of an anesthesiologist, and the patient does not choose the person who will perform the service, the court may infer that the patient relied on the reputation of the hospital. *Id.* at 647. The **White** Court found that even in the absence of proof of actual reliance, the court could find that "the patient reasonably relied on the health care provider's apparent authority to act for the hospital." *Id.* Thus, the Court found a factual issue as to vicarious liability based on the doctrine of apparent authority.

The trial court found that the reasoning used in **White**, while applicable in a hospital setting, "would not logically apply to a group of physicians." The trial court noted that there was no reason to think that Davis was aware of the identity of UT Medical Group or its "relationship to the operating physician." We agree with the trial court's analysis of **White**, and affirm the grant of partial summary judgment insofar as Davis' claim relies on the doctrine of apparent authority.

The trial court denied the motion of UT Medical Group as to the allegations of negligent supervision, implicitly finding that the evidence presented created a genuine issue of fact on this question. This issue is not raised on appeal, and the trial court's ruling on this issue appears correct as well.

However, the issue of UT Medical Group's responsibility for supervision of the operating physicians may create a factual issue as to whether Dr. McKinney was an <u>actual</u> agent of UT Medical Group, particularly when coupled with the fact that UT Medical Group billed patients for Dr. McKinney's services. The issue of UT Medical Group's control and supervision of Dr.

4

McKinney is pertinent to more than one theory under Tennessee law under which UT Medical Group could be held vicariously liable.

An agency relationship is created by the acts of the principal rather than the acts of the agent. *See Harben v. Hutton*, 739 S.W.2d 602, 606 (Tenn. App. 1987). In establishing whether an agency relationship exists, the conduct and relationship of the parties is examined. *V.L. Nicholson Co. v. Transcon Inv. and Fin., Inc.*, 595 S.W.2d 474, 483 (Tenn. 1980). *See also Harben*, 739 S.W.2d at 606. The "right to control" the agent is the essential factor in determining whether an agency relationship exists. *Jack Daniel Distillery, Lem Motlow, Prop. v. Jackson*, 740 S.W.2d 413, 416 (Tenn. 1987) (citing *John J. Heirigs Const. Co., Inc. v. Exide*, 709 S.W.2d 604, 608 (Tenn. App. 1986); *Sloan v. Hall*, 673 S.W.2d 548 (Tenn. App. 1984)).

Likewise, whether a master/servant relationship exists depends upon the amount of control by the principal over the "means and method" of the work of the servant. *McDonald v. Dunn Constr. Co.*, 185 S.W.2d 517, 520 (Tenn. 1945). *See also Youngblood v. Wall*, 815 S.W.2d 512, 517 (Tenn. App. 1991).

In addition, Tennessee recognizes the "loaned servant" doctrine, under which "[a]n employee of one employer may become the servant of another and shift the liability for his negligent acts to the second employer." *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 416 (Tenn. App. 1988) (citing *Richardson v. Russom Crane Rental Co.*, 543 S.W.2d 590 (Tenn. App. 1975)).

> Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act. This is a question of fact in each case.

*Parker*, 767 S.W.2d at 412 (citing *Gaston v. Sharpe*, 168 S.W.2d 784 (Tenn. 1943)). Thus, the issue of UT Medical Group's responsibility for directing and supervising Dr. McKinney's work is pertinent to UT Medical Group's vicarious liability for her acts.

5

In this case, Dr. McKinney was a physician employed by the United States government. There was an agreement executed among the University of Tennessee, UT Medical Group, and the United States Navy whereby Dr. McKinney would receive training in obstetrics and gynecology maternal-fetal medicine and "clinical experience . . . necessary to complete the training program" from the University of Tennessee. The agreement further provided:

> The parties acknowledge and agree to the following: . . .
>
> 11. The trainee affected by this agreement, assigned to the Training Institution [University of Tennessee], under orders issued by the U.S. Navy, remains an employee of the United States and perform[s] duties within the course and scope of [her] federal employment. Consequently, the provisions of the Federal Tort Claims Act . . . including its defenses and immunities, will apply to allegations of negligence or wrongful acts or omissions of the trainee while acting within the scope of [her] duties pursuant to this agreement.
>
> * * *
>
> While training at the [University of Tennessee], the trainee will be under the supervision of facility officials for training purposes and will be subject to and be required to abide by, all facility rules and applicable regulations, except where compliance would be inconsistent with Federal statute, regulation or any other law binding members of the U.S. Navy.

Dr. McKinney received compensation from the United States Navy. Under the agreement, UT Medical Group billed for the services of Dr. McKinney. The record includes the deposition of Steven Burkett ("Burkett"), the president and chief executive officer of UT Medical Group. Burkett testified that, under, the agreement, the University of Tennessee was responsible for training Dr. McKinney. Burkett also testified generally that UT Medical Group functioned as "the clinical arm that carries out the delivery of patient care."

Based on the trial court's implicit finding that a factual issue exists on the issue of negligent supervision, as well as the record discussed above, we must conclude that a factual issue exists as to whether Dr. McKinney would be deemed an actual agent or loaned servant of UT Medical Group. Therefore, the trial court's grant of summary judgment on this issue must be reversed.

6

The decision of the trial court is affirmed in part, reversed in part and remanded for further proceedings consistent with this Opinion. Costs are taxed equally to Appellant and Appellees, for which execution may issue.

                                         _____

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____

**ALAN E. HIGHERS, J.**

_____

**DAVID R. FARMER, J.**