Kenneth TIDWELL, Plaintiff/Counter–
Defendant/Appellee,

v.

MORGAN BUILDING SYSTEMS, INC.,
Defendant/Counter–Plaintiff/Appellant.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

May 11, 1992.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 24, 1992.

Scott A. Frick, Memphis, for defendant, counter-plaintiff, appellant.

Ralph D. Golden, Linda M. Jew, Memphis, for plaintiff, counter-defendant, appellee.

FARMER, Judge.

Defendant, Morgan Building Systems, Inc., appeals from the order of the trial court awarding a judgment in the amount of $1,460.25 in favor of Plaintiff, Kenneth Tidwell, on his breach of contract claim. The trial court also dismissed Defendant's counterclaim for breach of contract.

The facts in this case are largely undisputed. On May 18, 1990, Plaintiff's wife, Suzanne Tidwell, entered into a written contract with Defendant on behalf of Plaintiff for the purchase of an 8′ × 8′ portable building. It is alleged and admitted that she was acting as her husband's agent. The contract provided for a purchase price of $805.97, which Mrs. Tidwell paid in full by check that day. The agreement also provided for a requested delivery date of May 22 or 23, 1990. The contract provided, *inter alia*, that the requested delivery date was an estimate only and that subsequent modifications to the contract were to be in writing.

A few days later, Mrs. Tidwell returned to Defendant's place of business and ap-

proached the salesman she had dealt with previously, David Gibson, about changing the contract to order a larger building. Mr. Gibson completed a new purchase agreement for a 10′ × 12′ building with a skylight but did not require Mrs. Tidwell to sign the new agreement. Mrs. Tidwell again paid by check the full amount due, an additional $654.28. Mrs. Tidwell requested a new delivery date of June 2, 1990. Mr. Gibson and the store manager, Mike Middleton, stated that they could "more than likely" have the building ready by the requested delivery date.

On June 2, 1990, the expected delivery date, Mrs. Tidwell stayed home awaiting delivery of the building. In the morning she called Mr. Middleton, who stated that the building would be delivered as soon as the delivery man could get his truck fixed. Later in the morning, Plaintiff called the store and was told by an employee that the delivery man was there, that his truck was fixed, and that the building would be delivered as soon as the delivery man could get some help. Later that day, the Tidwells learned that the building would not be delivered that day and, in fact, had not arrived on Defendant's lot.

The following Monday, Mrs. Tidwell called Mr. Middleton at Defendant's store and informed him that she wanted her money back because Defendant had not lived up to its end of the bargain. Mr. Middleton offered to reduce the price of the building if Mrs. Tidwell would not cancel her order, but Mrs. Tidwell rejected this offer. Mr. Middleton then stated that it would take three weeks for Mrs. Tidwell to get her money back. Mr. Middleton completed an order cancellation request which indicated that the order was being cancelled because the building was delayed longer than Defendant had informed Mrs. Tidwell and she had bought another building elsewhere.

Three weeks later, Mrs. Tidwell again called Mr. Middleton and was again informed that it would take three weeks to refund her money. When Mrs. Tidwell reminded him that he had said this three weeks earlier, Mr. Middleton stated that he guessed the refund request "fell through

the crack." Mr. Middleton then told Mrs. Tidwell that she should call Scott Watson in Dallas if she did not receive her money within the following three-week period. After three weeks, Mrs. Tidwell did call Mr. Watson, who confirmed that he had received the paperwork and that Defendant owed Mrs. Tidwell a refund of $1,460.25. Mr. Watson told her he would call back in ten minutes but did not call back. Later Mrs. Tidwell called the Dallas office again and was told that Mr. Watson no longer worked for Defendant. Another employee, Melinda White, then informed Mrs. Tidwell that she would not be receiving a refund.

The building arrived at Defendant's store about June 15, 1990. Defendant, however, neither informed Plaintiff that the building had arrived nor attempted to deliver the building since Plaintiff had cancelled the order. The building was eventually sold to another party for an undetermined price.

Plaintiff sued Defendant for breach of contract and Defendant counterclaimed. The issues on appeal as presented by Defendant are:

(a) The trial court erred in finding and enforcing oral modifications to the agreement between Appellant [Defendant] and Appellee [Plaintiff].

(b) The trial court erred in allowing [Plaintiff] to recover under contract theory when [Plaintiff] was the first breaching party.

(c) The trial court erred in awarding judgment in favor of [Plaintiff] and requiring [Defendant] to refund the deposit paid by [Plaintiff].

(d) The trial court erred in holding that [Defendant] was under an affirmative obligation to inform [Plaintiff] of the contents of the Purchase Agreement after execution of the Purchase Agreement and of [Defendant's] intention to elect a remedy upon default by [Plaintiff].

(e) The trial court erred in failing to award [Defendant] damages sustained to enforce the Purchase Agreement.

The original purchase agreement executed by the parties on May 18, 1990, contained the following provisions:

**24. TIME FOR SUBSTANTIAL COM-PLETION. MORGAN'S estimated time for substantial completion of the work is indicated on the front of this Agreement in the block labelled "Delivery Requested On or Before". Commencement of the work will not be required until the signing and approval of all of the Contract Documents by PURCHASER. This REQUESTED DELIVERY DATE IS AN ESTIMATE ONLY, AND MORGAN MAKES NO ASSURANCES AS TO THE SPECIFIC NUMBER OF DAYS REQUIRED TO COMPLETE THE WORK. IN ADDITION, MORGAN IS NOT RESPONSIBLE FOR DELAYS CAUSED BY ACTS OF GOD, WAR, FLOOD, EARTHQUAKE, STRIKES OR OTHER SUCH EVENTS.**

. . . .

**44. SUBSEQUENT MODIFICATIONS.** This Agreement, and all of the Contract Documents, may not be modified other than in writing. Any such modification(s) will be binding on the parties only if signed by all the parties to the Agreement and executed in the same manner as this Agreement. In the case of corporate entities party to this Agreement, such subsequent modifications provided for in this paragraph may be executed only by the duly authorized officers of said corporate entities.

Defendant argues that provision 44 above prevented the trial court from admitting parol evidence concerning the revised delivery date of June 2, 1990. Specifically, Defendant argues that the trial judge erred in finding that the parties orally modified provision 24 of the contract by agreeing that June 2, 1990, was a firm delivery date and not merely an estimate. In support of this contention, Defendant cites T.C.A. § 47–50–112 and an unpublished opinion of this Court, *Barnett v. Willis*, 15 T.A.M. 29–1, 1990 WL 186697 (Tenn.App., M.S., June 13, 1990), *appeal denied*, 15 T.A.M. 46 (Nov. 5, 1990), *designated not for publication.*

T.C.A. § 47–50–112 provides that:

(a) All contracts, including, but not limited to, notes, security agreements, deeds of trust, and installment sales contracts, in writing and signed by the party to be bound, including endorsements thereon, shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written; provided, however, nothing herein shall limit the right of any party to contest the agreement on the basis it was procured by fraud or limit the right of any party to assert any other rights or defense provided by common law or statutory law in regard to contracts.

. . . .

(c) If any such security agreement, note, deed of trust, or other contract contains a provision to the effect that no waiver of any terms or provisions thereof shall be valid unless such waiver is in writing, no court shall give effect to any such waiver unless it be in writing.

In *Barnett v. Willis, supra,* the written agreement required any changes in work to be authorized by a written change order signed by the owner. In their dealings, however, the parties ignored this provision. This Court held that, under these circumstances, T.C.A. § 47–50–112(c) prevented the Court from giving effect to oral change orders and concluded that the statute superseded that part of *V.L. Nicholson Co. v. Transcon Investment & Financial Ltd.,* 595 S.W.2d 474 (Tenn.1980), which held that such a provision could be waived by the parties' conduct. *Barnett,* slip op. at 13. As heretofore noted, *Barnett* was designated as not for publication.

More recently, this Court held that, where the parties have executed a written contract providing that "no conditions or agreements exist other than those contained herein," pursuant to T.C.A. § 47–50–112(a) a rebuttable presumption arises that the document accurately reflects the complete and final agreement of the parties. *United National Real Estate, Inc. v. C.F. Thompson & Columbia Auto Parts, Inc.,* No. 01–A–01–9108–CV–00269, 1992 WL 69642 (Tenn.App., M.S., Apr. 8, 1992). Under these circumstances, the Court concluded that the trial court erred in allowing parol evidence to contradict the express

terms of the written contract. *United National*, slip op. at 9.

The purpose of T.C.A. § 47–50–112 is similar to that of the Parol Evidence Rule in that both seek to enforce contracts as written. In applying the Parol Evidence Rule, the Supreme Court has recognized that permitting a party to deny the express terms of a written contract which he has freely executed greatly undermines the value of all contracts. *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 232, 229 S.W.2d 146, 148 (1950). As this Court has noted, allowing a party to introduce evidence of oral statements which contradict the express terms of a written contract defeats the very purpose of committing agreements to writing. *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 81–82 (Tenn.App.1983).

■ The original contract, signed by the parties, provided that it could only be modified in writing. There is no dispute between the parties that they subsequently agreed upon a larger building at an increased purchase price. The purchase agreement filled out by Defendant on the larger building was not signed by the Tidwells, therefore, the language of the original contract would prevent this document from being a modification of the first agreement. We believe that the evidence is clear that the parties mutually agreed to rescind the first contract. As we interpret the written agreement and T.C.A. § 47–50–112, neither prohibits the parties from rescinding a written agreement by mutual oral agreement. Since the second agreement was not executed by either of the Tidwells, it was an oral agreement. While rescission must be clearly expressed, the acts and conduct of the parties may also be sufficient to effect the mutual rescission where the acts and conduct are positive, unequivocal, and inconsistent with the contract's existence. *Arkansas Dailies, Inc. v. Dan*, 36 Tenn.App. 663, 671, 260 S.W.2d 200, 203 (1953).

■ As we examine the conduct of the parties, the evidence discloses that Mrs. Tidwell informed Mr. Middleton that she was cancelling her order because the building was not delivered on June 2, 1990, and Mr. Middleton made no objections. Instead, he completed an order cancellation request and informed Mrs. Tidwell that she would receive a refund in approximately three weeks. In addition, Defendant neither informed the Tidwells when the building arrived nor ever attempted to make delivery. We hold that the preponderance of the evidence clearly shows that the parties effectively rescinded both purchase agreements. Once the parties mutually agreed to rescind the contract, Defendant was obligated to return to Plaintiff the purchase price paid. *See Issacs v. Bokor*, 566 S.W.2d 532, 538 (Tenn.1978); *Simmons v. Evans*, 185 Tenn. 282, 288, 206 S.W.2d 295, 297 (1947); *Rundle v. Capitol Chevrolet, Inc.*, 23 Tenn.App. 151, 159, 129 S.W.2d 217, 222 (1939).

We affirm the trial court's order awarding a judgment to Plaintiff in the amount of $1,460.25. In view of this holding, any remaining issues are pretermitted. Costs of this appeal are taxed to Defendant for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.