IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 7, 2002 Session

## TEXTRON FINANCIAL CORPORATION v. ELAINE E. POWELL, ET AL.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 98C-2652     Walter C. Kurtz, Judge**

---

**No. M2001-02588-COA-R3-CV - Filed October 8, 2002**

---

This dispute arises out of a personal guaranty executed by the defendants securing a loan. Following a trial by jury, the court below awarded the plaintiff $68,330 in damages plus attorney's fees and costs. On appeal, the defendants contend that the court below erred in applying the parol evidence rule to evidence which would show mistake and in not permitting the defendants to amend their answer. We reverse the judgment entered below and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Stephen C. Knight, Nashville, Tennessee, for the appellants, Elaine E. Powell and John E. Powell.

Melissa Blackburn, Nashville, Tennessee, for the appellee, Textron Financial Corporation.

**OPINION**

In 1995, Textron Financial Corp. (Textron), entered into an agreement with SBT, Inc. (SBT), to consolidate financing of several pieces of trucking equipment. The equipment was in the possession of Royal Transport (Royal), which began making the loan payments to Textron. In 1997, Trailer Lease purchased the equipment from Royal, and Textron and Trailer Lease (Elaine Powell, president) entered into a security agreement with Textron securing a $183,993.73 installment note. Collateral securing the note included several vehicles, a tractor and several trailers. John and Elaine Powell (the Powells) executed personal guarantees on the note. The 1997 transaction included a disbursement by Textron to itself of $156,427.54 of the $183,993.73 note. The additional $27,993 represents interest on the 1997 note collected in advance. The Powells paid $104,000 on the note and stopped making payments after June of 1998. In September of 1998, Textron filed a complaint against the Powells to enforce the guarantee agreement, alleging Trailer Lease had defaulted on the 1997 note. Textron prayed for damages of $72,854,40.

The Powells contend that the note had been paid in full. They submit that the 1997 agreement with Textron was to refinance the equipment for the amount due on the 1995 note, and that Textron represented that the amount outstanding on the 1995 note was $156,427.54. They further contend that the distribution of this amount from proceeds of the 1997 note by Textron to itself was intended to pay off the 1995 note. The Powells allege that Textron mistakenly represented the amount due on the 1995 note, and that the actual amount due was $80,000. They accordingly argue that because the outstanding amount on the1995 note was only $80,000, the remaining sums paid by Trailer Lease should have been applied against the principal under the terms of the loan agreement. The disbursement sheet, which was signed by the Powells, does not indicate the amount due on the 1995 note or for what purpose the $156,427.54 disbursement was made. Textron does not dispute that proceeds from the 1997 note included amounts to "close out" the 1995 note, but submits that the disbursement sheet is silent as to how the sums were to be disbursed.

The trial court refused to admit evidence of how much was due on the 1995 note or of how Textron disbursed the $156,427.54 to itself. The court concluded that the written agreement between Textron and the Powells was unambiguous on its face, and that the parol evidence rule therefore operated to exclude extrinsic evidence to vary the contract. Regarding the possibility of mistake, the court stated,

> [o]f course plaintiff contends that there was no mistake. Therefore, evidence showing that the refinanced amount was 'wrong' was not admissible to impeach the signed documents, despite Mr. and Ms. Powell[s'] insistence. . . . There is no proof here that the plaintiff or its agents entered into the contract based upon any mistake.

The court also declined to grant Powells' oral motion, made on the morning of trial, to amend their answer to include the affirmative defenses of misrepresentation and fraudulent inducement.

The cause was heard by a jury in June of 2001. The jury awarded Textron damages of $68,330, reducing the amount demanded by Textron based upon proof that Textron had failed to entirely mitigate its damages. Textron was also awarded $22,000 in attorney's fees and costs. The Powells' motion for a new trial, and Textron's motion for judgment in accordance with its motion for directed verdict or, in the alternative, an additur, were denied. Appeal to this Court ensued.

### *Issues*

The issues raised by the Powells for our review, as we perceive them are:

I.      Whether the trial court erred in its application of the parol evidence rule when it excluded evidence regarding the amount due on the 1995 note and evidence of how Textron disbursed $156,427.54 of proceeds from the 1997 note to itself.

II.     Whether the trial court erred in denying Powells' request to amend their answer to include the defense of fraudulent inducement.

Textron raises the additional issue of whether the trial court erred in denying its amended motion for judgment in accordance with a motion for a directed verdict or, in the alternative, for an additur.

### *Standard of Review*

The issues presented for our review in this case are issues of law. Our review of the trial court's conclusions of law in a jury trial is *de novo* upon the record, with no presumption of correctness. Tenn. R. App. P. 13(d); *Campbell v. Florida Steel Corp*., 919 S.W.2d 26, 28 (Tenn. 1996).

### *Denial of the Powells' Motion to Amend Their Answer*

We first address the issue of whether the trial court erred when it refused the Powells' motion to amend their answer to include a defense of fraudulent inducement. The Tennessee Rules of Civil Procedure provide:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, the party may so amend it at any time within 15 days after it is served. Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of the court; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01

This rule mandates that motions to amend shall be liberally granted unless the amendment would result in an injustice to the opposing party or is irrelevant to any claim or defense. *Walden v. Wylie*, 645 S.W.2d 247, 250 (Tenn. Ct. App. 1982). Factors which would justify a refusal by the trial court to permit an amendment include bad faith; an undue delay in filing; lack of notice or undue prejudice to the opposing party; repeated failure to cure deficiencies by previous amendments; futility of the amendment. *Id.* Rule 15.01 is premised on the fact that pleadings function primarily as a notice mechanism. *Id.* Accordingly, if leave to amend is granted close to the trial date, the court must grant a continuance in order to allow the opposing party sufficient time to address the new issue. *Id.*

In the present case, the Powells sought leave to amend their answer to include a defense of mistake, misrepresentation or fraudulent inducement on the morning of trial. The trial court granted the motion regarding mistake, but denied leave to amend to include fraud or

misrepresentation.[1]  The court observed that if leave were granted to add fraud and misrepresentation, the lawsuit would be so broadened as to necessitate a trial continuance. Counsel for the Powells stated, "I don't think anybody wants a continuance.  We want to get on with this thing. . . .  If [your Honor is] telling me that you would only grant [the motion to amend] along with a continuance of this trial, then I will withdraw it."

We agree with the court below that had leave to amend been granted on the morning of trial to permit the Powells to add a defense of fraudulent inducement or misrepresentation, justice would have required a continuance of the trial.  The record reflects that the Powells withdrew their motion to amend to include misrepresentation or fraudulent inducement in order to avoid a continuance.  The Powells' assignment of error on this issue is therefore without merit.  We accordingly affirm on this issue.

### *Exclusion of Evidence Based on the Parol Evidence Rule*

We next turn to the issue of whether the trial court erred in refusing to admit evidence of the amount due on the 1995 note and the disbursement of $156,427.54 of the 1997 note from Textron to itself.  The Powells contend that the 1997 note was intended in essence to be a transfer of indebtedness for the same equipment previously owned by SBT.  Thus $156,427.54 was disbursed from Textron to itself in order to pay off the 1995 note.  The Powells contend that the parties were mistaken, however, regarding the balance due on the 1995 note.  They allege Textron had indicated that they would review the records regarding payment of the 1995 note and make an adjustment if necessary.  The Powells further submit that during the course of discovery Textron refused to provide information regarding the principal amount due from SBT, and that it was only after examining the records of Royal Transportation, which had gone into bankruptcy, that they discovered that the balance due was in fact $80,000.  The Powells contend that the indebtedness for the equipment had therefore already been paid, and that the $156,427.54 transfer from Textron to itself to close out the 1995 note resulted in an overpayment of the amount due. The Powells' argument on appeal, as we perceive it, is that it was error for the trial court to exclude evidence of the amount due on the 1995 note and the disbursement of $156,427.54 because such evidence proves a mistake regarding the amount of indebtedness actually due on the equipment.

Textron contends that the Powells waived the defense of mutual mistake because the defense does not appear in the Powells' answer to the Second Amended Complaint.  The Tennessee Rules of Civil Procedure require

---

[1]Powells' oral motion to amend made at the beginning of trial requested leave to add the defenses of mutual mistake, misrepresentation, and fraudulent inducement.  In denying the motion, the trial court stated, "I think you already – if I recall, your answer, you already alleged mutual mistake."  Counsel for Powells responded, "Okay.  But also I think fraud or misrepresentation need to be added to that just out of precaution."  The answer did not include a defense of mistake however, although the court initially operated under the belief that it did.  Any error which might have resulted from this belief was avoided, however, as the court subsequently specifically granted leave to amend to include the defense of mistake.  The court stated, "Well, I think I'll allow you to amend to include it [mutual mistake]."

> [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Tenn. R. Civ. P. 9.02. We note, however, that the Powells' oral motion to amend their answer included the defense of mistake, and that they averred that the mistake pertained to the amount due on the 1995 loan to SBT which was, in essence, transferred to Trailer Lease. The trial court declined to grant the motion as to misrepresentation and fraudulent inducement without a continuance of the trial, and the Powells withdrew the motion pertaining to these defenses rather than accept a continuance. As noted above, however, the trial court granted the Powells' motion to amend to include the defense of mistake. The defense accordingly is not waived.

Textron further argues that the lawsuit pertains only to the 1997 note, and that the 1995 note is a completely distinct transaction between separate parties. It argues that the 1997 note and guarantee are unambiguous on their face and that extrinsic evidence of the 1995 note or of how Textron disbursed the $156,427.54 to itself are therefore inadmissible. Textron does concede, however, that proceeds of the 1997 note were used to "close out" the 1995 note, and that the $156,427.54 was disbursed for that purpose.

The essence of Textron's argument, as we perceive it, is that evidence of the amount due on the 1995 note is extrinsic to the 1997 agreement, and that the 1997 agreement must be enforced as written because its terms are clear and unambiguous. Powells' argument, as perceived by this Court, is that while the terms of the 1997 note are unambiguous, the purpose of the 1997 note was to transfer a pre-existing debt of SBT to Powells, and that proof of the amount due on the 1995 note is admissible to show a mistake regarding the amount actually due Textron for the equipment. The trial court excluded evidence of the 1995 note and how the $156,427.54 was disbursed from Textron to itself based on the parol evidence rule. After examining Powells' offer of proof, the court stated found no evidence that Textron made a mistake regarding the amount due.

A guaranty in a commercial transaction will be construed as strongly against the guarantor "as the sense will admit." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). Upon examination of the 1997 note, security agreement, and guarantee by the Powells, we find their terms unambiguous, and extrinsic evidence is not admissible to explain or vary those terms. *Id.* at 804. However, in the present action, the Powells seek not to explain or modify the unambiguous terms of the written agreement with Textron. They do not submit that the agreed upon terms or obligations under the contract were other than those which appear on the face of the documents. Rather, Powells argue that the distribution of $156,427.54 by Textron to itself was intended to pay off the 1995 note, and that this amount reflects a mistake regarding the amount actually due on the 1995 note.

The parol evidence rule serves to secure the integrity of contracts and to guard against fraud by a party who agrees to the unambiguous terms of a written agreement and then seeks to

disavow those terms through extrinsic evidence. 32A C.J.S. *Evidence* § 1132, § 1159 (1996); *see Tidwell v. Morgan Bldg. Sys., Inc.*, 840 S.W.2d 373, 376 (Tenn. Ct. App. 1992). Accordingly, the courts have refused to permit alteration of unambiguous contractual terms through the use of extrinsic or parol (oral) evidence. *Id.* The rule encompasses contracts of guaranty. 32A C.J.S. *Evidence* § 1165 (1996). However, application of the parol evidence rule includes many exceptions. *Id.* at § 1194; *see Huffine v. Riadon*, 541 S.W.2d 414 (Tenn. 1976). Once such exception to the parol evidence rule is that extrinsic evidence is admissible to show fraud or mistake. *See id.* In order to be admissible to show mistake, the mistake must be shown to be clerical or mutual, or, if unilateral, to have resulted from fraud or other inequitable conduct. 32A C.J.S. *Evidence* § 1234. A mutual mistake is one where both parties are operating under the same misconception. *Id.* The contract as written, therefore, is not an expression of the parties' actual intent. *Id.* When parol evidence is offered not to vary or disavow the terms of the contract, but to show an alleged fraud or mistake, this Court is hesitant to exclude the evidence. *See Maxwell v. Land Dev., Inc.*, 485 S.W.2d 869, 877 (Tenn. Ct. App. 1972); *Rentenbach Eng'g Co. v. General Realty, Ltd.*, 707 S.W.2d 524, 527 (Tenn. Ct. App. 1985); *Decatur County Bank v. Duck*, 926 S.W.2d 393, 397 (Tenn. Ct. App. 1997). Thus the rule has been considerably relaxed by the courts "in order that fraud may be thwarted, mistakes corrected, accidents relieved against, trusts set up and enforced, and usury exposed and eliminated." Gibson's Suits in Chancery, § 189 (William H. Inman ed., 6th ed. 1982).

In this case, the disbursement sheet is silent as to how Textron disbursed over $156,000 of proceeds to itself. Textron acknowledges, however, that the purpose of the disbursement was to "close out" the 1995 note. Thus the essence of the agreement was that Trailer Lease would borrow funds from Textron, which Textron would then disburse to itself, in order to pay off the 1995 note. The additional sums represent interest collected in advance. It is undisputed that the 1997 note did not serve to finance additional equipment other than that transferred from Royal Transport. Proof introduced to show that the amount due on the 1995 note was in fact $80,000 would serve not to vary the contract, but to show mistake regarding the amount of indebtedness remaining on the equipment. Accordingly, we hold that evidence of the amount due on the 1995 note and of how Textron disbursed the $156,427.54 to itself is not barred by the parol evidence rule. Judgment of the trial court on this issue is therefore reversed. We remand for a new trial.

### *Conclusion*

We affirm the decision of the trial court denying the Powells leave to amend their answer on the morning of trial to include the affirmative defenses of misrepresentation or fraudulent inducement. Judgment of the trial court excluding evidence of the 1995 note executed by Textron and SBT and evidence of how $156,427.54 in proceeds from the 1997 note were disbursed by Textron to itself is reversed. This cause is remanded for a new trial consistent with this opinion. In light of the foregoing, Textron's assignment of error regarding the trial court's

-6-

denial of a judgment in accordance with its motion for directed verdict or, in the alternative, an additur, is pretermitted.  Costs of this appeal are taxed to the appellee, Textron Financial Corp.


                                                     _____

                                                     DAVID R. FARMER, JUDGE