YOUNG SALES CORPORATION, Appellant,

*v.*

THOMAS D. BENSON, Commissioner of Revenue, State of Tennessee, Appellee.

450 S.W.2d 574.

(*Nashville,* December Term, 1969.)

Opinion filed January 16, 1970.

TRABUE, MINICK, STURDIVANT & HARBISON, Nashville, for appellant.

DAVID M. PACK, Attorney General, and PAUL E. JENNINGS, Assistant Attorney General, Nashville, for appellee.

MR. JUSTICE CRESON delivered the opinion of the Court.

This is an appeal from the Chancery Court of Davidson County, Tennessee. That court entered a decree in favor of Thomas D. Benson, Commissioner of Revenue, and dismissed the original bill of Young Sales Corporation.

In the course of this opinion the parties will be referred to as they appeared in the trial court; that is, appellant Young Sales Corporation as complainant; and appellee

Thomas D. Benson, Commisioner of Revenue of the State of Tennessee, as defendant.

On May 7, 1968, complainant filed its original bill seeking recovery of $3,625.32, representing taxes paid under protest on April 10, 1968, together with interest from date of payment. These taxes were assessed after an audit by the Tennessee Department of Revenue for the years 1965-1967, with respect to Sales and Use Tax liability of complainant.

Defendant filed an answer on June 10, 1968, in which it was averred that the taxes in question were lawfully collected.

The cause was heard on oral testimony on May 28, 1969. After taking the suit under advisement, the Chancellor rendered a memorandum opinion, sustaining the levy of the tax and dismissing the suit. Decree was entered accordingly on August 3, 1969. Complainant prayed and perfected an appeal to this Court.

Complainant is a corporation domiciled in Missouri, but is duly qualified to do business in Tennessee; and has an office and warehouse in Memphis, as well as other cities in the State. An inventory of industrial insulation materials is maintained at its warehouse in Memphis.

In connection with its operations, complainant frequently submits bids to contractors for the supplying and installation of industrial insulation. If it is awarded a job, it often has insulation shipped to the job site directly from the manufacturer. When this occurs, a use tax is paid to the state where the materials are applied on the job.

Over-the-counter sales of insulation are made from the Memphis warehouse, on which Tennessee Sales Tax is paid to the State. Sometimes, however, complainant ships materials drawn from this warehouse to a job site. In this situation, a use tax is paid to Tennessee if the job is in Tennessee. Where the job site is in another state, however, a use tax is paid to that state.

The basic question on this appeal is whether or not the Tennessee Use Tax is applicable to the value of materials withdrawn from complainant's warehouse in Tennessee and shipped into another state and used there.

 Subject to certain exceptions, it is a taxable privilege to use or consume any tangible personal property in Tennessee. T.C.A. sec. 67-3001 et seq.

T.C.A. sec. 67-3002(m) states:

"The term 'use tax' referred to in this chapter includes the 'use', the 'consumption', the 'distribution', and the 'storage' as herein defined."

"Use" is defined in T.C.A. sec. 67-3002(h) as follows:

" 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof except that it shall not include the sale at retail of that property in the regular course of business."

"Storage" is defined in T.C.A. sec. 67-3002(g) as follows:

" 'Storage' means and includes any keeping or retention in this State of tangible personal property for use or consumption in this State, or for any purpose other

than the sale at retail in the regular course of business."

The defendant argues that the "use" giving rise to tax liability in Tennessee is not the conventional concept of use, which is synonymous with ultimate consumption; but, it is insisted that *any* exercise of dominion over property which has come to rest in this state and has become a part of the mass of property in this state, is constitutionally subject to a use tax, with the stated exception of sale at retail of that property in the ordinary course of business.

Complainant, on the other hand, argues that such a construction would make the Tennessee Use Tax equivalent to an ad valorem tax, and that this was not intended by the Tennessee Sales and Use Tax Act. It is also complainant's position that such an application results in double taxation on all out of state shipments, which constitutes a burden on interstate commerce.

Parenthetically, we might mention that, in stating the issues both parties have carefully navigated their forensic crafts so that, rather than coming into head-on collision, they have silently passed, like ships in the night. Thus, we are asked to accept in its entirety, one of two not necessarily conflicting lines of reasoning; though it is quite apparent that neither line of argumentation is wholly free of fault. The State insists that the tax accrues at the moment that the materials come to rest in complainant's warehouse, while complainant argues that the supposedly taxable event is the withdrawal of the goods, even though for interstate shipment.

Before becoming too deeply immersed in such hair-splitting distinctions, we consider it of prime importance

to review the dominant purposes and limitations of the Tennessee Use Tax statutes.

■ Speaking of controversies involving the sales and use tax, this Court, in *Madison Suburban Utility District v. Carson* (1950), 191 Tenn. 300, 232 S.W.2d 277, stated that the validity of such tax "must be determined by its practical effect and operation rather than by particular descriptive language applied * * *."

Professor Paul J. Hartman, in the January, 1961 Bulletin, Section of Taxation, American Bar Association, p. 32, has aptly characterized the nature and purpose of use taxes as "* * * a levy on the privilege of using within the taxing state property purchased outside the state, if the property would have been subject to the sales tax had it been purchased at home."

This same dominant theme of the Use Tax was expressed by this Court in *Broadacre Dairies v. Evans* (1952), 193 Tenn. 441, 246 S.W.2d 78, as follows:

"The Use Tax is a tax on the enjoyment of that which was purchased after a sale has spent its interstate character. *McLeod v. J. E. Dilworth Co.*, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304. It is a compensating tax to place Tennessee manufacturers and merchants on a parity with nonresidents doing business in the State. It prevents undue discrimination against local retailers. Its chief function is to prevent the evasion of the Tennessee Sales Tax by persons purchasing tangible personal property outside of Tennessee for 'storage, use, or consumption' within the State. It thus prevents unfair competition on the part of out of State merchants. Thus when we take the use tax portion of the Act as complementary to the Sales Tax when taken

and applied together they provide a uniform tax upon either the sale or the use of all tangible personal property irrespective of where it may be purchased. These two taxes are complementary and functional parts of one system of taxation.''

■ Further evidence of the legislative intention that the Use Tax is to be applied primarily to prevent evasion of the sales tax is found in T.C.A. sec. 67-3008, which allows a credit against the use tax for any sales or use tax paid in another state. This statute is as follows:

"67-3008. *Credits for taxes paid in other states.*—The provisions of this chapter shall not apply in respect to the use or consumption, or distribution, or storage of tangible personal property for use or consumption in this state upon which a like tax equal to or greater than the amount imposed by this chapter has been paid in another state, the proof of payment of such tax to be according to rules and regulations made by the commissioner. If the amount of tax paid in another state is not equal to or greater than the amount of tax imposed by this chapter, then the dealer shall pay to the commissioner an amount sufficient to make the tax paid in the other state and in this state equal to the amount imposed by this chapter."

Irrespective of all potential constitutional problems which might be suggested here, T.C.A. sec. 67-3008 needs no construction, but only an application. By its plain words, none of the taxable events which cause accrual of tax are to be subject to the Tennessee Use Tax, when a like tax, equal to or greater than the Tennessee tax, has been rightly paid in another state. The dominant purpose of this statute must be given full significance in the

construction of what are, in fact, subordinate sections of the Act, on which the State relies.

In determining what event has occurred on which the State seeks to impose the Use Tax, the practical effect is, that no specific amount of tax owed can be determined until goods are withdrawn and disposed of in a particular way, that is, shipped into another state.

All past history of application and enforcement of this tax system indicates that the withdrawal of goods from the general mass in the warehouse is the supposedly taxable event. This is the argument of complainant before this Court; and to say the least, the argument and brief of the State wholly fails to make it appear that this contention is erroneous.

■ This same withdrawal is the initial step in the interstate transportation of the property. To impose the tax on this event would run afoul of the prohibition of levying taxes on bona fide interstate commerce. T.C.A. sec. 67-3007. See also *Texas Gas Transmission Corp. v. Benson* (1969), 223 Tenn. 279, 444 S.W.2d 137. Quite apparently, some prior event of use, etc. could have been selected; but it is equally apparent that this would have presented another and different question than that presented in this case.

Defendant concedes that complainant has been placed at "some economic disadvantage" by duplicate taxation, but insists that duplicate taxation comes about by the imposition of tax by another state in which the materials are actually used, and not Tennessee's. Defendant states in its brief that "The Arkansas and Mississippi taxes here exacted of complainant could be held to be burdensome on interstate commerce and struck down."

We are unable to accept this argument. Surely the state in which goods are "used" in the conventional sense of the term may constitutionally levy their use tax.

Defendant, while admitting that T.C.A. sec. 67-3007 expresses a plain intention not to tax goods imported into this state for export, contends, however, that this statute does express the intention to tax all property when it becomes a part of the mass of Tennessee property, to the extent that it may constitutionally do so under the Federal decisions dealing with the Commerce Clause.

■ Prior decisions of this Court have adopted the rule that, in interpreting and applying statutes in revenue cases, doubtful language as to imposition of the tax should be resolved in favor of the taxpayer. *Templeton v. Bartlett* (1950), 190 Tenn. 347, 229 S.W.2d 509; *Morton Pharmaceuticals, Inc. v. McFarland* (1963), 212 Tenn. 168, 368 S.W.2d 756.

The statute now under consideration, T.C.A. sec. 67-3007, states:

"*Interstate commerce exempt.*—It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state."

It is our opinion that defendant's contention would require a somewhat strained interpretation of this statute and would require ignoring the express language that goods imported into the state for export are not to be taxed.

This Court, in *Neuhoff Packing Co. v. City of Chattanooga* (1950), 191 Tenn. 395, 234 S.W.2d 824, stated:

"It is a well-settled rule of interpretation in this state that statutes levying taxes or duties upon citizens will not be extended by implication beyond the clear import of the language used, nor will their operation be enlarged so as to embrace matters or persons not specifically named or pointed out."

In construing the present statute, one portion of which tends to express complainant's position and another portion susceptible to defendant's construction, we must refer back to the dominant purpose and intention of the Sales and Use Tax Act; that is, that "there shall be no duplication of the tax in any event." T.C.A. 67-3005.

The portions of the Sales and Use Tax system of taxation pertinent here have remained unchanged since the time of inception in 1947. The fact that the Act, in this regard, has remained unmolested by the Legislature is strong evidence of legislative intent and proper construction. See *Sloan v. City of Columbia* (1920), 144, Tenn. 197, 232 S.W. 663.

It is plausibly argued that the statute considered as a whole does not support the tax imposed in this case; though it must be admitted that there is language that, when taken out of context, and from under the inhibiting effect of the dominant intentions expressed in this system

of legislation, may literally support the insistence of the State. To sustain the State's position though, is to aggrandize some phraseology and dilute the pervading effect of the system's dominant and clearly stated purposes, both as to what the tax is imposed upon and that which is not intended to be covered by it.

It results that the decision of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

DYER, CHIEF JUSTICE, HUMPHREYS, JUSTICE, and JENKINS, SPECIAL JUSTICE, concur.

McCANLESS, JUSTICE, not participating.