JACK DANIEL DISTILLERY, LEM MOTLOW, PROP. (and Brown–Forman Corporation, a Tennessee Corporation) Lynchburg, Moore County, Tennessee, Appellants,

v.

Donald W. JACKSON, Commissioner of Revenue for the State of Tennessee, and Kathryn Behm Celauro, Commissioner of Revenue for the State of Tennessee, Appellees.

Supreme Court of Tennessee, at Nashville.

Nov. 16, 1987.

Walter D. Haynes, Haynes & Miller, Washington, D.C., Joel M. Leeman, Gullett, Sanford, Robinson & Martin, Nashville, for appellants.

W.J. Michael Cody, Atty. Gen., and Reporter, Joe C. Peel, Asst. Atty. Gen., Nashville, for appellees.

## OPINION

COOPER, Justice.

This appeal is from the action of the Chancery Court of Davidson County dismissing three suits brought by Jack Daniel Distillery, Lem Motlow, Prop., a division of Brown–Forman Corporation, to recover sales and use taxes paid during the periods of January—September, 1984, and March—September, 1985. The taxes in question are those imposed by the State of Tennessee on advertising materials shipped from locations outside Tennessee to appellant's warehouse in Tennessee, where they were stored and ultimately shipped to destinations outside Tennessee. Appellant contends the advertising materials are exempt from sales tax under T.C.A. § 67–6–313 and under this court's decision in *Beecham Laboratories v. Woods*, 569 S.W.2d 456 (Tenn.1978), and that the chancellor's decision to the contrary was in error. Appellant also questions the chancellor's finding (1) that the taxes paid during the 1984 tax period were not paid under protest, and (2) that the suit to recover the taxes paid was filed too late. On reviewing the record, we affirm the chancellor's action in dismissing the suits.

The case was tried on a stipulation of facts, which included several lengthy exhibits. As background to the present controversy, the parties stipulated that prior to May 1, 1983, appellant, then known as Jack Daniel Distillery, Lem Motlow, Prop., Inc., engaged in the business of distilling, maturing, bottling, and selling Tennessee sour mash whiskey under its trademark "Jack Daniel." It also owned and operated the 665 Center, a Nashville warehouse used to store point of purchase (P.O.P.) advertising materials.

On May 1, 1983, appellant transferred the Jack Daniel Lynchburg distillery and the "Jack Daniel" trade mark to a wholly owned subsidiary. The subsidiary took the old corporate name of appellant. The appellant changed its name to "Brown–Forman Corporation," and continued to operate the 665 Center as part of a separate division of Brown–Forman.

We note that throughout the stipulation, the parties refer to the subsidiary corporation as the "new Jack Daniel." This reduces confusion caused by the change of Corporate names so we will likewise refer to the subsidiary Corporation as the "new Jack Daniel."

During the period of January, 1981, through March 31, 1984, the appellant paid sales and use taxes on all P.O.P. advertising material at the time of purchase. This included materials imported and stored at the 665 Center until exported. The state audited these returns in 1984, and concluded appellant had overpaid its sales and use taxes by $246,712.00 during the period of May, 1981—December, 1983, by failing to take advantage of the import-for-export exemption set out in T.C.A. § 67–6–313.

Beginning April 1, 1984, the appellant discontinued paying sales tax on P.O.P. advertising at the time of its purchase. Further, in the sales and use tax returns filed for the months of January, 1984, through September, 1984, the appellant deducted all P.O.P. advertising materials on which it had previously paid tax. On the audit of these returns, the exemption claimed on materials purchased through "new Jack Daniel," shipped from vendors outside of Tennessee to the 655 Center, stored there, then shipped out of Tennessee, was disallowed. The sales tax on these items totalled $170,517.00. Appellant's total sales tax liability for the 1984 tax period, including the contested $170,-517.00, was determined to be $269,586.08. The auditor applied the overpayment of $246,711.53 for the period May, 1981—December, 1983, to the 1984 tax liability. A

deduction from a refund due appellant for the June, 1984, tax period took care of the remainder of the 1984 tax liability.

The parties stipulated that during the period of from January, 1981, through September, 1984, the appellant did not pay sales and use taxes under protest at the time it filed its returns and made its monthly payments. For the 1985 tax year, it paid $15,114.00 under protest for materials imported through "new Jack Daniel" for export. This amount also is contested.

The contested tax liability grows out of transactions involving "new Jack Daniel" after the corporate reorganization of May 1, 1983. The transactions are of the same type, that is, advertising materials imported from out of state, delivered to the 665 Center, and stored there until eventual export. Under the contract between the appellant and "new Jack Daniel," the subsidiary agreed to sell and appellant agreed to buy merchandise bearing the subsidiary's Merchandise Mark. "Merchandise shall be supplied to BUYER as requested, for such price as may be agreed upon from time to time...." Title to the merchandise passed from the subsidiary corporation to appellant "upon delivery of the Merchandise to or for the benefit of BUYER at a location selected by the BUYER." Paragraph 16 of the contract expressly provides that: "No right granted hereunder shall in any manner be construed as the creation or designation of one party as the representative or agent of the other."

According to the stipulation, appellant would request the subsidiary corporation to purchase a particular item of advertising material. Appellant would prepare and deliver a purchase order to "new Jack Daniel" for execution and issuance to the vendor. The vendor would ship the item to appellant's warehouse (the 665 Center) and send the invoice to "new Jack Daniel." Each month, "new Jack Daniel" would invoice appellant for all of the advertising materials and attach the vendors' invoices which would equal in amount the invoice to appellant. Appellant would pay "new Jack Daniel," who, in turn, would pay the vendors.

The State argues and the chancellor found that $60,655.00 of the contested 1984 taxes were not paid under protest. These were the taxes paid by appellant at the time of purchase of P.O.P. advertising materials and deducted on sales and use tax returns filed for the months of January, 1984, through September, 1984. Appellant insists that the taxes were paid under protest, citing *Kroger Co. v. Tollett*, 608 S.W. 2d 846 (Tenn.1980). In *Kroger*, the commissioner applied a refund due the taxpayer on an unrelated matter to the deficiency which the taxpayer was contesting, thereby reducing the deficiency. The taxpayer paid under protest the remaining deficiency, but brought suit to recover the entire amount. The court held that because of the commissioner's actions in applying the refund to reduce the deficiency without the taxpayer's consent, the taxpayer could sue for the entire deficiency, though only a portion of it was paid under protest. We see no difference in principle in this case than in the *Kroger* case. While it is true that the contested taxes were not initially paid under protest, appellant claimed an exemption as and when it actually exported the advertising materials. Having asserted the exemption at its first opportunity (and in effect obtaining the return of the initial tax payment), the appellant can not be said to have paid the contested taxes until the State offset the tax liability with the prior overpayment. Under *Kroger*, the act of the commissioner in effect would constitute payment under protest.

With regard to all the contested 1984 taxes, the State argues and the chancellor held that appellant's action to recover sales taxes paid is time-barred in that the suit filed by appellant was not within six months of the time of payment as is required by T.C.A. § 67-1-903. The triggering event for the statute of limitations in § 67-1-903 is the payment of taxes, not the time of assessment. Where payment is made by the state taking money due the taxpayer and applying it against a state claimed tax deficiency, the period of limitation begins to run when the taxpayer knows or reasonably should know of the

state's action. It is apparent from the stipulation filed in this case that the appellant knew of the State's action no later than November, 18, 1984. Suit to recover these payments was filed on June 6, 1985, which was after the expiration of the six month period allowed by T.C.A. § 67–1–903. It follows that the action to recover the contested 1984 taxes paid is time-barred.

■ As to the contested 1985 taxes, appellant insists (1) there was no taxable sale between appellant and its subsidiary, as found by the chancellor, but that the subsidiary acted solely as an agent in making purchases of advertising material, and, (2) in any event, the purchase and handling of the advertising material brings it within the import-export exemption set forth in § 67–6–313.

■ Whether an agency relationship exists between appellant and "new Jack Daniel" must be determined by the facts and circumstances set forth in the stipulation. *United States v. Boyd*, 211 Tenn. 139, 363 S.W.2d 193, 200 (Tenn.1962); *Franklin Dist. Co. v. Crush Intern.* 726 S.W.2d 926, 930 (Tenn.App.1987). And, the burden of proof is on the party asserting agency. *John J. Heirigs Const. Co., Inc. v. Exide*, 709 S.W.2d 604, 608 (Tenn.App. 1986), *Sloan v. Hall*, 673 S.W.2d 548 (Tenn. App.1984). While there may be a number of factors that determine whether an agency relationship exists, the right of control is the essential test. *John J. Heirigs Const. Co., Inc. v. Exide, supra.*

In this case the contract and purchase orders, while not necessarily controlling, constitute strong evidence that "new Jack Daniel" was not acting as agent for appellant in purchasing the advertising materials. The purchase order between the seller and "new Jack Daniel" provides for shipment F.O.B. seller's place of business. Since the purchase order does not otherwise state when title passes, under § 47–2–401(2)(a) title passes to "new Jack Daniel" out of state. Under the contract between "new Jack Daniel" and appellant, title passes from "new Jack Daniel" to the appellant upon delivery to the appellant; in other words, title passes in Tennessee. This is significant in that for sales tax purposes, sale means "any transfer of title or possession, or both ... of tangible personal property for a consideration." T.C.A. § 67–6–102(14)(A).

Appellant argues that because it instructs "new Jack Daniel" what to buy, when and where to buy it, what price to pay, and how it should be shipped as well as reimbursing it for its cost without mark-up, the relationship is an agency and that the contract terminology should not control. The stipulation in fact uses the word "request" rather than "instruct." Further, the care taken by the parties to structure the transaction to provide for the passage of title from "new Jack Daniel" to appellant, coupled with an express disclaimer in the contract that "new Jack Daniel" was acting as an agent, militates against appellant's argument.

■ Appellant also argues that even if a sale took place at the time of transfer of title from "new Jack Daniel," the transaction was exempt from sales tax under the "import-for-export" exemption set forth in T.C.A. § 67–6–313. It is stated in T.C.A. § 67–6–313 that:

It is not the intention of this chapter (Sales and Use Taxes) to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on a bona fide interstate commerce.

■ The import-for-export exemption from sales tax does not apply when the transfer of title is from a vendor located in Tennessee to a purchaser also located in Tennessee even though the purchaser intends to and does export the merchandise. See *Board of publication of the Methodist Church, Inc. v. Woods*, 609 S.W.2d 501 (Tenn.1980). In that case, the taxpayer printed catalogues for a company known as Camping World, Inc. The catalogues were delivered to Mail Services, a company located in Nashville, which served as an agent of Camping World to fix mailing labels to the catalogues for mailing to addresses, mostly located out of state. This court held that the transfer of possession or "sale" took place in Tennessee and the transaction was a taxable event not exempt

under T.C.A. § 67–6–313, even though the parties contemplated immediate exportation. The court there specifically distinguished *Beecham Laboratories v. Woods*, 569 S.W.2d 456 (Tenn.1978) and *Young Sales Corp. v. Benson*, 224 Tenn. 88, 450 S.W.2d 574 (1970), relied on by the plaintiff in this case, on the ground that "in neither of those cases was there an allegation that a sale or transfer of possession to a buyer took place in Tennessee." *Board of Publication of the Methodist Church, Inc. v. Woods, supra* at 504. That is not the situation in this case. Here, appellant purchased the Jack Daniel P.O.P. advertising materials from its subsidiary, "new Jack Daniel," in accordance with the agreement attached to the stipulations. Under the agreement, a sale of the merchandise was effected and title passed from "new Jack Daniel" to the appellant upon delivery of the merchandise at a location selected by appellant. The location selected was in Tennessee, making the sale subject to the Tennessee sales tax.

The judgment of the trial court dismissing the actions for a refund of sales taxes paid is affirmed. Costs will be paid by appellant and its surety.

HARBISON, C.J., and FONES, DROWOTA, and O'BRIEN, JJ., concur.