IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
MAY 19, 2003 Session

## SECURITY FIRE PROTECTION COMPANY, INC. v. JOE B. HUDDLESTON, Commissioner of Revenue, State of Tennessee

**Direct Appeal from the Chancery Court for Shelby County**
**No. 104530-1     Walter L. Evans, Chancellor**

---

**No. W2002-01175-COA-R3-CV - Filed December 31, 2003**

---

Security Fire Protection Company challenged the Commissioner of Revenue's assessment of sales and use taxes arising from an audit of Security Fire's transactions with out-of-state customers from January 1, 1990, through March 31, 1993.  The Shelby County Chancery Court granted the Commissioner's motion for summary judgment, holding 1) material purchased in Tennessee under a certificate of resale were not resold for purposes of the sales tax exemption; 2) material purchased by Security Fire out of Tennessee, stored and partially fabricated in Tennessee, and utilized by Security Fire in performance of contracts out of Tennessee was subject to Tennessee use tax; and 3) no credit was due for taxes paid out-of-state.  We affirm the  judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

William H. D. Fones, Jr., John B. Burns, Memphis, TN, for Appellant

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Charles L. Lewis, Deputy Attorney General, Wyla M. Posey, Assistant Attorney General, for Appellee

### OPINION

Security Fire Protection Company, Inc. ("Security Fire") is a Tennessee corporation with its principal place of business in Shelby County, Tennessee.  Security Fire fabricates and installs fire protection systems for commercial and industrial properties.  During the period relevant to this lawsuit, Security Fire was registered with the Tennessee Department of Revenue and the departments of revenue of nineteen (19) other states.

The Tennessee Department of Revenue ("Commissioner") audited Security Fire for the period January 1, 1990, through March 31, 1993. Following the audit, Commissioner assessed Security Fire a total of $98,072 in sales and use taxes, plus interest of $20,103, for the audit period. In August 1994, Security Fire filed a complaint in the Shelby County Chancery Court to set aside the assessment. In its complaint, Security Fire conceded that it owed $4,334 of the assessed tax and interest on over-the-counter sales made in Tennessee. However, Security Fire challenged Commissioner's assessment of the remaining $113,841.

Security Fire disputed Commissioner's assessment of Tennessee tax on two types of materials, identified by the parties as Type A and Type B. The parties stipulated to the factual issues regarding these materials. Security Fire purchased Type A materials in Tennessee under a certificate of resale, which exempted these materials from Tennessee sales tax at the time of purchase as sales for resale. It purchased Type B materials outside of Tennessee, placed them into inventory at its Memphis warehouse, and fabricated them into component parts for fire protection systems. Security Fire transported Type A and Type B materials to construction sites out of Tennessee, and incorporated them in fire protection systems which it installed in commercial and industrial properties. Upon installation, the materials became part of the real property.

Security Fire paid neither Tennessee sales nor use taxes on either Type A or Type B materials. However, Security Fire paid sales and/or use taxes in the states where it installed the fire protection systems. The parties expressly did not stipulate whether this practice was legally correct. The Commissioner assessed Tennessee sales tax plus interest of $88,446 on Type A materials, and use tax plus interest of $24,815 on Type B materials.[1]

The pivotal issue before the trial court was whether Security Fire was liable for the Tennessee sales and use taxes assessed by Commissioner pursuant to the Retail Sales Tax Act, codified at Tenn. Code Ann § 67-6-101 *et seq*. After stipulating to the relevant facts, the parties filed cross motions for summary judgment. The trial court determined Security Fire was liable for the sales and use taxes, plus interest, as assessed by Commissioner. The trial court accordingly granted Commissioner's motion for summary judgment.

Security Fire now appeals to this Court. We affirm the award of summary judgment to Commissioner.

---

[1]Commissioner assessed no tax on materials which Security Fire purchased out-of-state, stored in Tennessee without further fabrication, and transported to other states for use there. Security Fire paid applicable Tennessee taxes on materials it purchased out-of-state and used in projects in Tennessee. These materials are not part of this dispute.

## ISSUES PRESENTED FOR REVIEW

Security Fire raises the following issues, as we restate them, for review by this Court:

1) Whether the trial court erred in failing to find that a factual dispute regarding the passing of title to the materials precluded the award of summary judgment to Commissioner.
2) Whether the trial court erred in its interpretation of the parol evidence rule.
3) Whether the trial court erred in finding that Security Fire was not engaged in the resale of goods.
4) Whether the trial court erred in finding that materials purchased in Tennessee on a resale certificate and used out of Tennessee are subject to Tennessee sales tax.
5) Whether the trial court erred in finding that materials imported from other states and processed for export are subject to Tennessee use tax.
6) Whether the trial court erred in failing to find Security Fire had paid taxes on the materials to other states, and in refusing to give Security Fire credit for the amount of taxes paid to the other states.

## STANDARD OF REVIEW

This appeal is before us from a grant of summary judgment. Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. We review a trial court's award of summary judgment *de novo*, with no presumption of correctness. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn.2002).

## ANALYSIS

We begin our analysis of this case by noting that this Court must construe taxation and exemption statutes differently. *Covington Pike Toyota, Inc. v. Cardwell, Comm'r of Revenue*, 829 S.W.2d 132, 135 (Tenn. 1992). Taxation statutes are construed liberally in favor of the taxpayer and strictly against the taxing authority. *Id.* Thus taxation statutes will not be extended beyond the clear intention of the legislature. *Id.* Statutes granting exemptions from taxation, however, are strictly construed against the taxpayer. *Id.* It is the taxpayer who carries the burden of proving entitlement to an exemption. *Id.* Additionally, where a word employed by the legislature in the statute has not been defined in the statute, the Court employs the natural and ordinary meaning of the word to determine the intent of the legislature. *Id.* Because this dispute concerns transactions which occurred from January 1990 through March 1993, we must consider it under the Tennessee Code in effect at that time.

### Title to Material

We first address the threshold question of whether a factual dispute precluded an award of summary judgment in this case. The trial court should award summary judgment only where the moving party can demonstrate that there are no genuine issues regarding material facts of the cause

-3-

of action, and that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn.1993). In determining whether to award summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of the nonmoving party. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).

Security Fire submits that there exists a disputed issue of material fact regarding when title to the materials at issue passed from Security Fire to the owner or general contractor at the out-of-state job site. Generally, in determining when title to personal property has been transferred from a seller to a buyer for Tennessee sales tax purposes, the court looks to the provisions of the Uniform Commercial Code ("UCC"). *Eusco, Inc. v. Huddleston, Comm'r of Revenue*, 835 S.W.2d 576, 579 (Tenn. 1992). The UCC as adopted in Tennessee provides: "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . ." *Id.*; Tenn. Code Ann. § 47-2-401(2)(1979). With respect to delivery of materials in the contractor-subcontractor relationship, however, unless expressly provided by contract, title to materials supplied by a subcontractor remains with the subcontractor until attached to the real property or accepted by the property owner as his property. *Vinsant Plumbing and Heating Co. v. Rubber Constr. Co.*, 486 S.W.2d 540, 543 (Tenn. Ct. App. 1971)(perm. app. denied).

Security Fire argues that although its contracts are silent as to the passing of title, the fact that materials were invoiced separately or as separate items on job invoices evidences that title passed upon delivery to the job site. It further submits that the trial court erred in applying the reasoning of *Vinsant* to this case, and that its contracts were similar to those of the taxpayer in *Hearthstone, Inc. v. Moyers, Acting Comm'r of Revenue*, 809 S.W.2d 888 (Tenn. 1991). The trial court concluded that, under *Vinsant*, title to the materials did not pass from Security Fire until after installation of the fire protection systems. The interpretation of a contract is a question of law which we review *de novo. General Const. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist Church*, 107 S.W.3d 513, 520 (Tenn. Ct. App. 2002).

In *Hearthstone*, the taxpayer sold kits for the construction of log homes. *Hearthstone,* 809 S.W.2d at 889. These homes were then erected on the customer's foundation either by Hearthstone or another contractor. *Id.* Commissioner assessed sales and use tax on the materials included in the kits, arguing that Hearthstone was a contractor of homes, and not a reseller of the materials. *Id.* The Tennessee Supreme Court held that the determinative inquiry was whether title to the kits passed to the buyer before construction of the homes. *Id.* at 890. The court found, as a factual matter, that title to the log home kits passed to the end buyer upon delivery of the kits and before the kits were used by Hearthstone to erect the homes. *Id.* The court accordingly affirmed the chancellor's determination that Hearthstone was not liable for the tax assessed by Commissioner. *Id.* at 891.

This Court revisited this issue in *Honest Abe Log Homes, Inc. v. Huddleston, Comm'r of Revenue*, where taxpayer delivered materials to job sites for use by its dealer, 4A Construction, in homes under construction. *Honest Abe Log Homes, Inc. v. Huddleston, Comm'r of Revenue*, No.

01A-01-9405-CH-00224, 1994 WL 594960 (Tenn. Ct. App. Nov. 2, 1994)(perm. app. denied). In *Honest Abe*, we noted that the pivotal issue was whether title passed to the owner before use by 4A Construction in a home on the owner's property. *Id.* at *3. We also distinguished *Honest Abe* from *Hearthstone*, noting that in *Hearthstone* there was no delivery to a site where construction was in progress, and title to the property had passed to the end consumer before construction had begun. *Id.* In *Honest Abe*, we held that title had not passed to the ultimate consumer before use by 4A Construction, and accordingly affirmed judgment for Commissioner. *Id.*

Upon review of the contracts in the record before us, we agree with the trial court that title to the materials utilized by Security Fire at its out-of-state job sites did not pass to the owner or contractor before installation by Security Fire. Security Fire's subcontracts do not specifically provide when title to materials supplied by Security Fire shall be considered to have passed to the general contractor or owner. Thus, under *Vinsant*, title to the materials remained with Security Fire. Moreover, as in *Honest Abe*, Security Fire delivered materials to a job site, where it then used them in fire protection systems which it installed. We also note that most of the contracts required that Security Fire provide insurance coverage, an insurance certificate, or otherwise protect the material, while others were silent on the issue of insurance. In all instances, however, Security Fire delivered materials to which it had title to a job site for incorporation into systems which it installed. The responsibilities incidental to ownership of these materials clearly remained with Security Fire.

We agree with the trial court's application of the reasoning of *Mainland v. Alfred Brown Co.*, 461 P.2d 862 (Nev. 1969), as quoted in *Vinsant*, to this case. There is nothing in the contracts at issue providing that title to the materials passed upon delivery. Moreover, as in *Mainland* and *Vinsant*, the contracts at issue here were subcontracts for materials and labor to be incorporated by Security Fire into real property. Security Fire's contracts unambiguously were subcontracts for the design, building, and installation of fire protection systems. Security Fire maintained control over the materials, and there is no proof in this record that title to the materials passed to the general contractors before they were used by Security Fire in construction of the fire protection systems.

Security Fire also contends that the trial court erred in its interpretation of the parol evidence rule. It submits that the trial court erred in not permitting the introduction of parol evidence regarding the course of conduct between the parties to determine when title to the materials passed. Security Fire argues that the trial court should have admitted the deposition of Claude Chafin, President of Security Fire, and that this deposition supports a finding that title to the materials in question passed to the general contractor upon delivery.

The parol evidence rule is a rule of substantive law which prohibits the use of parol or extrinsic evidence to alter a written contract or instrument. 32A C.J.S. *Evidence* §§ 1132-1133 (1996). The rule serves to guard against fraud by a party who seeks to disavow contractual terms. *Tidwell v. Morgan Bldg. Sys., Inc.*, 840 S.W.2d 373, 376 (Tenn. Ct. App. 1992). Thus courts prohibit the introduction of parol evidence where a contract is unambiguous on its face. *Id.* The rule has many exceptions, however, and parol evidence generally is admissible where one of the parties to the lawsuit is not a party to the writing. 32A C.J.S. *Evidence* § 1143.

Having reviewed the deposition of Mr. Chafin, we find it unnecessary to address whether the trial court erred in its interpretation of the parol evidence rule. Any such error would have been harmless, as Mr. Chafin's deposition does not negate the chancellor's finding that title did not pass to buyers before use by Security Fire. Mr. Chafin's deposition makes clear the fact that the contracts involved here are for the installation of fire security/sprinkler systems, including the material. Although the contracts included costs for materials and labor, and payment terms differed from project to project, the general contractors in this case were not buying materials, or fire protection kits, but installed systems. Mr. Chafin's deposition does not support a conclusion that title to the materials passed to the contractor before use by Security Fire.

Like the taxpayer in *Honest Abe*, Security Fire delivered materials to which it had title from its warehouse in Tennessee to on-going construction sites for its own use. Security Fire's contracts were for the design and installation of complete systems, not for the sale of tangible personal property. In light of the foregoing, we affirm the trial court's finding that title to the materials did not pass to the contractors/buyers before use by Security Fire.

## Sales Tax on Type A Materials

We next turn to whether Security Fire is liable for Tennessee sales tax on materials it purchased in Tennessee under a certificate of resale and then incorporated into fire protection systems it installed out of Tennessee. The Retail Sales Tax Act, as codified at Tenn. Code Ann § 67-6-101 *et seq.*, provides:

> It is declared to be the legislative intent that every person is exercising a taxable privilege who:
> (1) Engages in the business of selling tangible personal property at retail in this state;
> (2) Uses or consumes in this state any item or article of tangible personal property as defined in this chapter, irrespective of the ownership thereof or any tax immunity which may be enjoyed by the owner thereof;
> (3) Is the recipient of any of the things or services taxable under this chapter;
> (4) Rents or furnishes any of the things or services taxable under this chapter;
> (5) Stores for use or consumption in this state any item or article of tangible personal property as defined in this chapter;
> (6) Leases or rents such property, either as lessor or lessee, within the state of Tennessee;
> (7) Charges admission, dues or fees taxable under this chapter; or
> (8) Sells space under this chapter.

Tenn. Code Ann. § 67-6-201(West, WESTLAW through 1993).

The statute defines a "sale" as:

> any transfer of title or possession, or both, exchange, barter, lease or rental, conditional, or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration, and includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work, and the furnishing, repairing or serving for a consideration of any tangible personal property consumed on the premises of the person furnishing, preparing or serving such tangible personal property . . . .

Tenn. Code Ann § 67-6-102(23)(A) (West, WESTLAW through 1993).

A retail sale under the statute is:

> a taxable sale of tangible personal property or specifically taxable services to a consumer or to any person for any purpose *other than for resale.*

Tenn. Code Ann. § 67-6-102(22)(A)(West, WESTLAW through 1993) (emphasis added). Thus the code excludes sales for resale from the definition of ordinary retail sales. The section further provides, "[a]ny sales for resale must, however, *be in strict compliance with rules and regulations promulgated by the commissioner*." *Id.* (emphasis added).

Rule 1320-5-1-.08 ("Rule 8") as promulgated by Commissioner permits contractor-dealers to purchase materials under a certificate of resale, which exempts or delays the payment of sales tax. Rule 8 provides:

> (1) Contractors and sub-contractors engaged in the business of erecting, building or otherwise improving, altering and repairing real property for others, and also engaged in the business of selling building materials and supplies to other contractors, consumers, and users, and who may not be able to segregate that portion of the materials and supplies that they will use or consume in the fulfillment of their contracts from that portion of the materials and supplies that they will sell at retail, may give a resale certificate to the seller of the materials and supplies.
> (2) Contractor-dealers making sales of tangible personal property shall report all sales made, and all withdrawals from inventory for use as a contractor each month, and pay any applicable Sales or Use Tax due. Any withdrawal from inventory for use as a contractor shall be reported and the tax due thereon shall be paid with the return for the location of the inventory, regardless of the place of use, either in or out of the state.
> (3) Suppliers making sales of materials and supplies to contractor-dealers and delivering such materials and supplies to a job site for use, or tagging or

> marking particular materials and supplies for a particular job being performed by the contractor-dealer, shall collect the applicable Sales or Use Tax on those sales.

Tenn. Comp. R. & Regs. 1320-5-1-.08.

Commissioner does not dispute that Security Fire is a contractor-dealer for the purposes of Rule 8, or that it wrongfully purchased materials under a certificate for resale. Commissioner asserts, however, that Security Fire is liable for the sales tax on materials purchased in Tennessee under a certificate of resale and then incorporated into fire protection systems installed by Security Fire out-of-state (Type A materials).

Security Fire, on the other hand, contends that it is not liable for the sales tax on Type A materials. Security Fire's argument, as we perceive it, is three-fold. First, Security Fire asserts that it resold the materials, rather than used them, and therefore is not liable for the Tennessee sales tax. Second, Security Fire relies on *Young Sales Corp. v. Benson*, *Comm'r of Revenue*, 450 S.W.2d 574 (Tenn. 1970), for the proposition that there is no distinction between the application of the sales and use taxes, and that Tennessee may not look to Security Fire's use of the materials out-of-state to determine whether they are subject to Tennessee sales tax. Third, Security Fire asserts that the imposition of Tennessee sales tax on Type A materials violates Tenn. Code Ann. § 67-6-313(a), which provides that no tax shall be levied on "articles of tangible personal property imported into this state or produced or manufactured in this state for export."

Security Fire's lengthy argument that the application of sales and use tax are not distinguishable, and its over-reliance on *Young Sales*, a case dealing with use tax, obfuscate what is actually clear from a plain reading of Rule 8. Further, Security Fire's contention that Type A materials are not distinguishable from materials purchased out of Tennessee, stored in Tennessee, and then exported to job sites out of Tennessee reflects a misreading of the rules and the statutory scheme of taxation. Clearly, Tennessee cannot impose a sales tax on materials purchased out of Tennessee. Whether Tennessee can impose a use tax on such materials depends on whether, as a factual matter, any use occurred in Tennessee, and will be further addressed below.

*Young Sales* is distinguishable from the case now before this Court. *Young Sales* involved the imposition of Tennessee use tax on materials purchased out of Tennessee, stored in Tennessee without fabrication, and shipped to another state for use there. *Young Sales*, 450 S.W.2d at 575. It has no application whatsoever to the question of whether Tennessee may impose a sales tax on materials purchased *in* Tennessee. It is perhaps unfortunate, but Tennessee simply has no authority to impose a tax on sales made out of Tennessee. Further, we do not read *Young Sales* to stand for the proposition that there is no distinction between materials purchased by a contractor in Tennessee for use out-of-state, and those purchased out-of-state for use in a third state. As Security Fire notes, the *Young Sales* court observed that the sales and use taxes "applied together provide a uniform tax upon either the sale or use of all tangible property irrespective of where it may be purchased." *Id.* at 576. This must be read in light of the court's thorough analysis of the purpose of the use tax,

however, which is applied to "prevent evasion of the sales tax . . . ." *Id.* Together, the two taxes form a complete retail tax scheme. The taxes are not, however, indistinguishable. *Hearthstone, Inc. v. Moyers, Acting Comm'r of Revenue*, 809 S.W.2d 888, 890 (Tenn. 1991). We must examine their application separately, and, in each case, determine whether a taxable event occurred in Tennessee. *See id.*

Clearly, but for the certificate of resale, Security Fire would have been required to pay sales tax on Type A materials when it purchased them in Tennessee. *See Nasco, Inc. v. Jackson, Comm'r of Revenue*, 748 S.W.2d 193, 195 (Tenn. 1998). Under Rule 8, a contractor-dealer may purchase materials under a certificate of resale where it is not known, at the time of purchase, whether the materials will be resold or used by the contractor-dealer in performance of a contract. Tenn. Comp. R. & Regs. 1320-5-1-.08(1). If the contractor-dealer resells the materials, he must collect and pay the applicable sales tax. Tenn. Comp. R. & Regs. 1320-5-1-.08(2). If he withdraws them from inventory for his use as a contractor, he is liable for the applicable tax, "regardless of the place of use, either in or out of the state." *Id.* Moreover, "[c]ertificates of resale may not be used to obtain tangible personal property . . . to be used by the purchaser. . . ." Tenn. Comp. R. & Regs. 1320-5-1-.68(2)("Rule 68"). Additionally, Commissioner may revoke the registration certificate of one who wrongfully misuses the certificate to obtain tangible personal property for his own use. *Id.*

Read together, the rules provide a mechanism through which the imposition of sales tax is delayed until such time as the property is either resold or used by a contractor-dealer who, at the time of purchase, does not know whether the property will be used by him or resold. The purchase by the contractor-dealer is not exempt from tax unless it is specifically resold. *Nasco*, 748 S.W.2d at 195. There is no exemption from sales taxation of property exported by a taxpayer for his own use. *Hearthstone*, 809 S.W.2d at 891.

Subsection three of Rule 8 further indicates that materials used by a contractor-dealer in performance of his own contract are not exempt from sales tax. The subsection provides that a supplier who delivers materials to a job site for use in a job being performed by the contractor-dealer "shall" collect the applicable tax on those sales. Tenn. Comp. R. & Regs. 1320-5-1-.08(3). Thus, suppliers may not sell property under a certificate of resale where they know the property is not for resale, but for the contractor-dealer's own use. Moreover, Commissioner may revoke the registration certificate of a wholesale supplier who sells property under a certificate of resale when the supplier knows that the property is not for resale but for the purchaser's own use or consumption. Tenn. Comp. R. & Regs. 1320-5-1-.68(3).

Reading Rule 8 and Rule 68 together, it is clear that a contractor-dealer who uses materials in performance of his own contract is not exempt from the payment of sales tax on those materials. The tax liability on property used in the performance of a contractor-dealer's own contracts is incurred at the time of purchase as a retail sale, as the sales tax would be collectable at that time but for the certificate of resale. If the property is resold, the contractor-dealer must collect and pay the tax on the resale as a sale at retail. If the goods are not resold but used by the contractor-dealer, he must pay the sales tax. *Nasco*, 748 S.W.2d at 196. Despite Security Fire's assertion to the contrary,

-9-

determining whether the tax was due based on subsequent events is not "contrary to the concept of a contractor-dealer." Rather, Rule 8 provides an exemption that is conditioned on subsequent resale. *Id.*

Our inquiry must therefore turn to Security Fire's contention that it resold the Type A materials. As discussed at length above, Security Fire incorporated the materials into fire protection systems which it designed and installed as a subcontractor at commercial and industrial job sites. It therefore "use[d] [them] as a contractor" in the context of Rule 8 and, accordingly, is not exempt from liability for the sales tax that would have been due but for the certificate for resale.

We next address Security Fire's assertion that Rule 8 conflicts with Tenn. Code Ann. § 67-6-313(a). Rule 8 provides for the imposition of tax on materials purchased in Tennessee on a certificate of resale but then used by the contractor in his business, regardless or whether such use occurred in or out of the state. Tennessee Code Annotated § 67-6-313(a) prohibits the imposition of tax on articles in interstate commerce or which are produced or manufactured in Tennessee for export.

Security Fire argues that this Court should make no distinction between materials it purchased out of Tennessee and used in third states, and materials it purchased in Tennessee, in determining whether Type A materials are exempt from Tennessee sales tax. Security Fire states, "the Commissioner concedes that it cannot tax Type C materials - imported material, held in inventory, withdrawn from inventory, shipped out of Tennessee with nothing more done to it in Tennessee. However, the Commissioner seeks to tax Type A materials[,] which differ from Type C materials only in that the Type A materials were purchased in Tennessee." In support of its argument, Security Fire submits that *Young Sales* "in no way implies that a distinction should be drawn between materials in a contractor-dealer's inventory based on where the materials were purchased." Security Fire's argument, as we perceive it, is that Type A materials are exempt from Tennessee sales tax because they were used at out-of-state job sites and, accordingly, are exempt as articles in interstate commerce under *Young Sales v. Benson, Comm'r of Revenue*, 450 S.W.2d 574 (Tenn. 1970).

We disagree with Security Fire's reading of *Young Sales* and its assertion that Type A materials are exempt from taxation as articles in interstate commerce. The property at issue in *Young Sales* came into Tennessee as articles in interstate commerce, were not used in Tennessee, and were shipped to third states. The *Young Sales* court held the property was exempt from Tennessee tax because withdrawing *imported* goods from a Tennessee warehouse and shipping them out-of-state, without more, is not a taxable event. *Young Sales,* 450 S.W.2d 577-78. The property in *Young Sales* never lost its character as articles in interstate commerce. Thus taxation of the *Young Sales* property would have violated the prohibition against taxing articles in interstate commerce as provided, at that time, at Tenn. Code Ann. § 67-3007 (current version at Tenn. Code Ann. § 67-6-313(a)).

Unlike *Young Sales*, the issue here is whether Tennessee may impose a tax on sales made *in* Tennessee, sales which would have been taxable at the time of purchase but for a certificate of

resale. Contrary to Security Fire's argument, the fact that the materials were purchased in Tennessee is the determinative factor. The original sale of Type A materials to Security Fire, unlike the mere withdrawal of imported goods from a warehouse for interstate shipping, was a taxable event. When Security Fire purchased the Type A materials in Tennessee, they already were part of the mass property of this state as defined at Tenn. Code Ann § 67-6-211 (West, WESTLAW, through 1993). *See Young Sales*, 450 S.W.2d at 574 (noting: taxpayer properly paid Tennessee sales tax on over-the-counter sales of imported property made from Memphis warehouse). Rule 8 provided a limited exemption from sales taxation insofar as the materials were to be resold. Once Security Fire determined the materials were for its own use in fulfillment of its contracts, however, it became liable for the Tennessee sales tax.

## Use Tax on Type B Materials

Security Fire also challenges Commissioner's assessment of Tennessee use tax on Type B materials. Type B materials are those materials which Security Fire imported from other states, stored, partially fabricated, and transported to other states for use in performance of its contracts. Security Fire contends these materials are exempt from taxation under the import-for-export and produced/manufactured for export exemptions provided by Tenn. Code Ann. § 67-6-313(a).

In its argument to this Court regarding the application of use tax, Security Fire continues to assert that the materials were resold and to meld sales and use tax concepts. We have held that Security Fire did not resell the materials, but used them in performance of its own contracts. We also have dispensed with the theory that the two taxes should be considered without distinction. We accordingly perceive the issues pertaining to the use tax assessed on Type B materials as follows:

> 1) whether Security Fire's withdrawal from inventory and partial fabrication in Tennessee of imported materials constitutes use under the use taxation statutes;
> 2) if so, whether such materials, which Security Fire subsequently transported to its out-of-state job sites, are exempt from use taxes under the imported-for-export or manufactured-for-export exemptions;
> 3) whether such materials are exempt from use taxes under the contractor's use statute codified at Tenn. Code Ann. § 67-6-209.

The primary purpose of the use tax is to prevent evasion of Tennessee's sales tax. *Young Sales*, 450 S.W.2d at 576. Accordingly, the use tax levies a tax on personal property that is not sold in Tennessee but is "used, consumed, distributed, or stored for use or consumption in this state; provided, that there shall be no duplication of the tax." Tenn. Code Ann. § 67-6-209 (West, WESTLAW through 1993). The code further provides that a dealer who imports property from other states "shall pay the tax imposed by this chapter on all articles of tangible personal property so imported and used, the same as if the articles had been sold at retail for use or consumption in this state." Tenn. Code Ann. § 67-6-210 (West, WESTLAW through 1993). This section also provides that there "shall be no duplication of the tax . . . ." *Id.*

Thus, the use tax levies a tax on property purchased out of Tennessee but used in this state where such property would have been subject to sales tax had it been purchased in Tennessee. *Young Sales*, 450 S.W.2d at 576. It allows a credit, however, for taxes previously incurred and paid in other states. *Id.* As a result, taxpayers who import property for use in Tennessee pay the same amount in taxes as they would have paid had they purchased the property in Tennessee. The sales and use taxes, therefore, complement each other to impose a uniform amount of tax on property purchased in Tennessee and property purchased out-of-state but used in Tennessee. *Id.* The use tax thereby puts Tennessee vendors on parity with out-of-state vendors who sell property for use in this state. *Id.*

In order to determine whether a use tax is due on property imported into Tennessee and subsequently shipped into another state, we must first determine whether a taxable event has occurred in Tennessee. *See id.* at 577. Mere withdrawal of property from a warehouse is not use for purposes of the use tax. *Id.* Moreover, such taxation would violate the prohibition on taxing interstate commerce. *Id.*

The parties in this case do not dispute that Security Fire imported the Type B materials, fabricated them, and transported them out of Tennessee for installation as component parts in fire protection systems. Thus our inquiry turns to whether Security Fire's fabrication of those materials constitutes use under the statute. Commissioner asserts that it does. Security Fire, on the other hand, contends the materials were resold and used out of Tennessee, and relies on *Hearthstone* for the proposition that it is not liable for Tennessee tax.

We begin our analysis of this issue by again distinguishing *Hearthstone* from this case. The use tax question addressed by the *Hearthstone* court concerned the imposition of the tax on property purchased in Tennessee and used in Tennessee to manufacture log home kits which the taxpayer then exported and sold out-of-state. *Hearthstone, Inc. v. Moyers, Acting Comm'r of Revenue*, 809 S.W.2d 888, 891 (Tenn. 1991). The *Hearthstone* court opined that, under Tenn. Code Ann. § 67-6-313(a), the property was exempt from taxation as property manufactured in this state for export. *Id.* The subsequent use of the property by the taxpayer to erect the log homes, moreover, occurred exclusively in the other states, after title to the homes had passed to the ultimate purchasers. Thus it was not exported from Tennessee for the taxpayer's own use in performance of a contract, but was resold and used only after title had passed. *Id.* Therefore, there was no taxable post-sale use of the materials by the taxpayer in Tennessee. Accordingly, there could be no imposition of the Tennessee use tax under Tenn. Code Ann. §§ 67-6-203, 210 or the contractor's use statute codified at Tenn. Code Ann. § 67-6-209.

The threshold determination here is whether Security Fire's withdrawal from inventory of imported materials for fabrication into component parts was a taxable event for use tax purposes. The code defines use as "the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it does not include the sale at retail of that property in the regular course of business." Tenn. Code Ann. § 67-6-102(28)(A)(West, WESTLAW through 1993). Clearly, had Security Fire not fabricated or otherwise altered the materials, it would not be liable for

a use tax. *Young Sales*, 450 S.W.2d 577-78. Indeed, the parties here have stipulated that Commissioner did not assess a tax on such material. We agree with Commissioner, however, that when Security Fire fabricated the materials, it exercised control over the materials such that the materials lost their character as articles in interstate commerce and became subject to use tax.

We next must determine whether Type B materials are exempt from the use tax under Tenn. Code Ann. 67-6-313(a) as property imported for export or manufactured for export. Property imported into Tennessee and exported from this state without use clearly is exempt from taxation under the import for export provision of section 313(a). *Young Sale*s, 450 S.W.2d at 577. However, in the current case, Security Fire did not import and export Type B materials without use in Tennessee. A taxable event occurred in Tennessee when Security Fire fabricated the Type B materials in this state. Thus Type B materials are not exempt from taxation as articles imported for export. Likewise, the manufactured for export exemption does not apply to property which a taxpayer transports to another state for its own use in performance of a contract. *Hearthstone*, 809 S.W.2d at 891; *see Nasco, Inc. v. Jackson Comm'r of Revenue*, 748 S.W.2d 193, 194 (Tenn. 1988); *Honest Abe Log Homes, Inc. v. Huddleston, Comm'r of Revenue*, No. 01A-01-9405-CH-00224, 1994 WL 594960 at *3 (Tenn. Ct. App. Nov. 2, 1994)(perm. app. denied). Thus Type B material is not exempt from taxation under section 313(a).

Additionally, the contractor's use statute provides that a contractor is liable for Tennessee tax where he uses property in the performance of his contract. Tenn. Code Ann. § 67-6-209(b)(West, WESTLAW through 1993). The contractor incurs this tax liability regardless of who holds title to the property or whether the title holder would be liable for sales or use tax. *Id.* The section prohibits dual taxation of the property, however, by exempting property which previously has been subjected to a sales or use tax. *Id.*

Under the rationale developed by the Tennessee Supreme Court in *Young Sales*, *Hearthstone*, and *Nasco*, we agree with Commissioner that Type B materials are not exempt from Tennessee use tax. A taxable event occurred in Tennessee when Security Fire withdrew the Type B materials from the stream of interstate commerce and fabricated them in this state. Security Fire did not manufacture or fabricate the materials for export, moreover, but used them in performance of its contracts. We accordingly affirm the chancellor's determination that Security Fire is liable for Tennessee use tax on Type B materials.

### Credit for Tax Paid to Other States

Security Fire asserts that, under *Hearthstone*, it should receive a credit for sales and use taxes paid on Type A and Type B materials in other states. Commissioner concedes that Security Fire paid sales and/or use taxes in the states where the materials were installed. Commissioner does not stipulate, however, that such tax payments were legally correct. Commissioner accordingly refutes Security Fire's claim that these sums should be credited against Security Fire's Tennessee tax liability.

We agree with Security Fire that the entire statutory tax scheme clearly seeks to avoid duplication of taxes. Tenn. Code Ann. §§ 67-6-203, 209, 210, 507 (West, WESTLAW through 1993). Where a taxpayer has properly paid a legally imposed sales or use tax on materials purchased or used in another state and imported into Tennessee for use here, the taxpayer may claim a credit of that amount against its use tax liability in Tennessee. Tenn. Comp. R. & Regs. 1320-5-1-.91("Rule 91"); *Bellsouth Adver. and Publ'g Co. v. Johnson, Comm'r of Revenue*, 100 S.W.3d 202, 204 (Tenn. 2003). However, contrary to Security Fire's assertion otherwise, we do not read the code, *Hearthstone,* or *Bellsouth* as mandating that a taxpayer should receive credit in Tennessee for taxes paid in other states where the taxpayer incurred the Tennessee tax *before* a taxable event occurred in another state.

In *Hearthstone*, there was no taxable event in Tennessee such that taxpayer incurred a Tennessee use tax before a use tax was assessed and properly paid in another state. *Hearthstone*, 809 S.W.2d at 891. Similarly, in *Bellsouth*, the court determined that taxpayer was entitled to a credit against Tennessee use taxes for sales taxes incurred and paid in another state prior to use of the property in Tennessee. Rule 91, moreover, provides a credit where the previously paid tax was "legally imposed" and paid. Tenn. Comp. R. & Regs. 1320-5-1-.91.

Clearly, the taxpayer in *Bellsouth* was liable for sales taxes in the state of origin before it brought the materials into Tennessee for use here. Likewise, in the case before us, Security Fire became liable for Tennessee sales tax on Type A materials when Security Fire purchased those materials in Tennessee under a certificate of resale and then did not resell them. Security Fire did not incur a legally imposed tax in another state on Type A materials before it purchased them in Tennessee. Therefore, it cannot claim a credit against Tennessee sales tax.

Security Fire also became liable for Tennessee use tax when Security Fire used Type B materials in Tennessee before it used the materials in performance of contracts in other states. After a taxpayer has withdrawn property from the stream of interstate commerce, it is liable for the use tax where the property would have been subject to a sales tax had it been purchased in Tennessee. *Bellsouth*, 100 S.W.3d at 206. As discussed above, Security Fire withdrew the Type B materials from the stream of interstate commerce. Because it used them in performance of its own contracts, Security Fire would have been liable for sales tax on Type B materials had Security Fire purchased the materials in Tennessee. Again, a subsequently incurred tax in another state cannot relieve Security Fire of its *prior* tax liability in Tennessee.

Whether Security Fire's payment of taxes in states where it subsequently used the material was proper, or whether Security Fire should receive a credit in those states for taxes incurred in Tennessee, are not issues for determination by the courts of this state. Additionally, Security Fire does not claim a credit for sales or use taxes paid to other states before Tennessee taxes were incurred. We accordingly affirm the judgment of the trial court.

**CONCLUSION**

In light of the foregoing, we hold Security Fire is liable for the Tennessee sales tax assessed by Commissioner on Type A materials, and for the Tennessee use tax assessed on Type B materials. We also hold Security Fire is not entitled to a credit on taxes paid to other states where it installed the materials, because Security Fire's liability for Tennessee taxes pre-existed the imposition or payment of taxes to those states. We affirm judgment of the trial court awarding summary judgment to Commissioner. Costs of this appeal are taxed to Security Fire Protection Company, Inc., and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE